UNITED STATES of America,
Plaintiff-Appellee,

v.

Julius C. IMMORDINO and Joanne Im-
mordino, Defendants and Third-Party
Plaintiffs-Appellants,

v.

Joseph C. COSTA et al., Third-Party
Defendants-Appellees.

No. 75–1239.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 14, 1975.

Decided March 12, 1976.

Rehearing Denied May 17, 1976.

Irvin M. Kent, Denver, Colo. (William W. Webster, Denver, Colo., on the brief), for defendants and third-party plaintiffs-appellants.

Edward R. Gleason, Littleton, Colo., for third-party defendants-appellees William R. Myers and Elizabeth Myers.

Blaine L. Boyens, Denver, Colo., for third-party defendants-appellees Joseph C. Costa, Dorothy Costa, Edward F. Langevin and Waymeth S. Langevin.

Carolyn J. McNeill, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

On August 10, 1966, the Small Business Administration (SBA) made a loan of $45,-000 to C & S Sales, Inc. d/b/a Building Products Inc (C & S). The note was secured by collateral including four separate, identical guaranty agreements executed re-spectively by Julius C. and Joanne Immordino (appellants), Joseph C. and Dorothy M. Costa, Edward F. and Waymeth S. Langevin, and William R. and Elizabeth Myers (all third-party appellees).

The maker defaulted on the note, and the SBA negotiated with third-party appellees for settlements of their liabilities under the guaranty agreements. These negotiations resulted in SBA releasing third-party appellees from their obligations under the guaranty agreements. SBA accepted $4300 from the Costas, $1000 from the Langevins and $1500 from the Myers as the considerations for these releases. The settlements from the Costas and the Langevins were credited to an earlier $25,000 loan by SBA to C & S which those two couples also had guaranteed. The $1500 from the Myers was credited to the $45,000 loan.

On November 17, 1972, the United States (appellee), on behalf of the SBA, filed the instant action against appellants to recover the remaining uncollected balance, $40,-155.55 principal and $4,470.25 interest accrued to May 11, 1970 plus interest thereafter at the daily rate of $6.134879.

Appellants answered and set forth, *inter alia*, the following defenses: (1) release of the third-party appellees had the effect of releasing appellants and (2) SBA had diverted proceeds from collateral securing payment of the $45,000 loan to the payment of the $25,000 note which appellants had not guaranteed; thus, appellants were entitled to a set-off in that amount. Appellants subsequently filed a third-party complaint against the third-party appellees seeking a judgment for all sums which might be adjudged owing to appellee by appellants. All third-party appellees answered; the Costas and the Langevins set up the following defenses: (1) estoppel, (2) acquiescence in the release by appellants, (3) denial that the guaranties were joint and several as to the separate parties, and (4) the statutory limitation, Colo.Rev.Stat. §§ 76–1–1 to –3 (1963) [1] of appellants' liabil-

---

1. These statutes are now found at Colo.Rev. Stat. §§ 13–50–101 to 103 (1973).

13–50–101. *Joint obligations and covenants.* All joint obligations and covenants shall be taken and held to be joint and several obligations and covenants.

13–50–102. *Joint debtors—release—effect.* A creditor of joint debtors may release one or more of such debtors and such release shall

ity to their proportionate share which eliminated any right to contribution. Additional answers and the following pleadings were filed: (1) by the Myers, a counterclaim against appellants and cross-claim against the Costas and Langevins and (2) by the Costas and Langevins, cross-claim against the Myers, counterclaim against appellants and counterclaim against appellee. An amended answer filed by appellants sought an accounting from SBA to determine the amount of the set-off, if any.

A stipulation of facts was filed which contained the following prefatory sentence:

[C]ounsel after much discussion concluded that the procedure and discovery could perhaps be reduced and the issues narrowed if the Court, at its convenience, determine[d] a basic and important issue on a stipulation of facts concerning this issue (not the issues as to contribution and accounting).

Motions for summary judgment were filed by all parties. Appellee filed affidavits concerning the disbursement of proceeds from the collateral and payments to the loan accounts. The trial court heard oral argument on the motions for summary judgment and subsequently filed its opinion and order.

The trial court determined appellants had expressly agreed, based upon provisions in the guaranty agreement, that the release of coguarantors would not affect their liability in any way, and consequently, appellants were liable to appellee for the unpaid balance of the debt guarantied. The trial court denied appellants' claim for contribution, relying on the guaranty agreements which indicated ". . . an express agreement that each set of guarantors assumed responsibility for the entire obligation on default with full knowledge . . . that some or all of the other coguarantors

could be released by SBA." Also the court determined appellants' claim for set-off was without merit and an accounting already had been provided; thus appellants' claim for an accounting was unfounded. The trial court determined the cross-claims and counterclaims asserted by the third-party appellees were moot and ordered those dismissed. *United States v. Immordino*, 386 F.Supp. 611 (D.Colo.1974).

In denying appellants' contention below that appellee's action in releasing the coguarantors released appellants at least to some extent, the trial court pointed to the following provisions in the guaranty agreement signed by appellants:

The term "collateral" as used herein shall mean any funds, *guaranties,* agreements or other property or rights or interests of any nature whatsoever, or the proceeds thereof, which may have been, are, or hereafter may be, mortgaged, pledged, assigned, transferred or delivered directly or indirectly by or on behalf of the Debtor or the undersigned or any other party to S.B.A. . . . (emphasis added)

. . . . .

The undersigned hereby grants to SBA full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and SBA at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

. . . . .

(d) To consent to the substitution, exchange, or *release of all or any part of the collateral,* whether or not the collateral, if any, received by SBA upon such substitution, exchange, or release shall be of the same or of a different

---

operate as a full discharge of such debtor so released, but such release shall not release or discharge or affect the liability of the remaining debtor. Such release shall be taken and held to be a payment in the indebtedness of the full proportionate share of the debtor so released. 13–50–103. *Liability of remaining debtor.* In case one or more joint debtors are released,

no one of the remaining debtors shall be liable for more than his proportionate share of the indebtedness, unless he is the principal debtor and the debtor released was his surety, in which case the principal debtor is liable for the whole of the remainder of the indebtedness.

character or value than the collateral surrendered by S.B.A.; (emphasis added)

. . . . .

The obligations of the undersigned shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against SBA, by reason of any action SBA may take or omit to take under the foregoing powers.

The trial court stated: "The question of whether the common-law rules of release or whether the Colorado statutes [§§ 13–50–101 to –103] govern the determination of this action is thus academic and immaterial since defendants expressly agreed that the release of coguarantors would not affect defendants' liability in any way."

█ The trial court thus held the consent given by appellants in the guaranty agreement resolved the issue of the effect of release of the other guaranty agreements. Because appellants had agreed that releases of other collateral would not affect their liability, the trial court decided it was unnecessary to determine what rule of law should be applied to determine the effect of the releases. The appellants' consent itself provided the releases would have no effect. *See Austad v. United States,* 386 F.2d 147 (9th Cir. 1967); 38 C.J.S. *Guaranty* § 81 (1943).

█ Below the appellants argued that the consent to SBA's handling of the *guaranties* was not consent to what occurred here, *viz.,* release of *coguarantors.* On appeal, for the first time, appellants give the basis for that argument. Appellants argue the proper interpretation is that the four guaranty instruments evidenced only one guaranty. The following rule is cited:

A contract may be contained in several instruments. These if made at the same time, in relation to the same subject-matter, may be read together as one instrument, and the recitals in one may be explained or limited by reference to the other. This rule obtains even when the parties are not the same, if the several contracts were known to all the parties

and were delivered at the same time to accomplish an agreed purpose.

*Massachusetts Bonding & Ins. Co. v. Feutz,* 182 F.2d 752 (8th Cir. 1950), *quoting Peterson v. Miller Rubber Co.,* 24 F.2d 59 (8th Cir. 1928). This entire contention must be rejected. Matters not presented to the trial court for consideration generally will not be considered by this Court. *Harman v. Diversified Medical Inv. Corp.,* 524 F.2d 361 (10th Cir. 1975); *International Union of Operating Eng'rs v. Central Nat'l Life Ins. Co.,* 501 F.2d 902 (10th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 397 (1975). Nothing present here takes this contention outside this normal limitation on review. Furthermore, we cannot agree with appellants that the guaranty agreements were ambiguous and must be construed against appellee. We find no ambiguity relevant to the issues raised by appellants.

█ For the reasons stated by the trial court and the additional ones stated above, we hold the release of the coguarantors did not affect appellants' liability to appellee.

Having determined appellants are liable for the unpaid amount, we must consider their claim for contribution from third-party appellees, their coguarantors. The court denied this claim pointing to the unconditional total liability appellants assumed, the guaranty agreements' language allowing SBA to release the collateral without affecting the guarantors' liability, and the injustice of altering this relationship and allowing contribution.

█ Although we cannot agree with all the trial court's legal reasoning, we do agree with the result the trial court reached. Initially, we note the applicability of Colorado law to this issue. *See Bank of America Nat'l Trust & Sav. Ass'n v. Parnell,* 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956); *United States v. Manufacturers Hanover Trust Co.,* 231 F.Supp. 160 (S.D.N.Y.1964). The Colorado Supreme Court has recognized the right to contribution when one guarantor pays more than his proportionate share of the common obligation. *Taylor v. Hake,* 92 Colo. 330, 20 P.2d 546

(1933). Third-party appellees do not, however, contend that contribution is not applicable to coguarantors; they contend appellants' acquiescence in the release of the coguarantors, via the guaranty agreement, eliminates the right to contribution. In support of this argument, third-party appellees cite *Pettijohn v. Ray,* 116 Wash. 136, 198 P. 981 (1921). That case is cited at 18 C.J.S. *Contribution* § 3 (1939) as support for the proposition that "where one joint obligor agrees that the obligee may look to him for payment as the sole debtor and the obligee acquiesces in the agreement, payment by the former casts no duty on the other obligor to contribute." Regrettably, the facts of *Pettijohn* are not clear. The case involved the purchase of certain machinery by two persons; a fire partially destroyed the equipment. There was evidence of an agreement between the joint debtors that one of them, appellant, would be the sole debtor. The court stated:

> . . . if Rogers [the seller] acquiesced in the asserted agreement of the parties that after the fire appellant became and was his sole debtor, and thereafter, looking only to him for payment he released respondent, then clearly appellant acquired no rights by paying Rogers, and that payment cast no duty on respondent to contribute.

This case appears to support the proposition that rights to contribution can be waived by agreement between the obligated parties; that proposition is practically indisputable. 18 Am.Jur.2d *Contribution* § 4 (1965).

■ Our instant problem is to determine if, in an agreement with a creditor, a guarantor may by implication waive his implied-in-law right to contribution. We do not seek an agreement in fact but must decide if an agreement to contribute should be implied in law. Having determined Colorado applies general rules concerning contribution and having failed to locate any Colorado decisions dealing with this issue, we apply general principles in making our decision.

The right to contribution is based, not upon the instrument on which the guarantors have become liable, but upon the theory that when they signed such instrument, they impliedly agreed that if there should be any liability, each would contribute his just proportion of the amount for which they might be held liable.

38 Am.Jur.2d *Guaranty* § 128 (1968). While generally the right to contribution can be destroyed only by an agreement between the obligated parties themselves, 18 Am. Jur.2d *Contribution* §§ 6 and 32 (1965), we believe this case presents an exception to that rule.

■ Here appellants agreed the creditor, SBA, could release and settle with other coguarantors, without appellants' obligation to the creditor being affected.[2] In effect, appellants granted SBA the power to "pick its victim." Contribution was designed to prevent a creditor from having an effective power to select his victim from among many under the same obligation. 18 Am. Jur.2d *Contribution* § 4 (1965). In this instant case, denying contribution would effectuate the granted power to settle and release coguarantors. Allowing contribution would be inconsistent with the broad powers appellants granted the SBA. Consequently, we hold the provisions of the guaranty agreement are sufficient to imply a waiver of the right to contribution.[3]

---

**2.** In another provision of the guaranty agreement, not reproduced *supra,* the appellants granted SBA the power

> To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the note of the Debtor to SBA), to grant any extension or renewal thereof and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto

**3.** Appellants misconstrue the situation when they argue SBA could not unilaterally affect the right to contribution by releasing coguarantors and had a duty not to interfere with the right to contribution. SBA did not act unilaterally without appellants' prior agreement. Appellants had granted SBA the power to release coguarantors. As we have determined, that grant of power carried with it the implication that the right to contribution would be waived if SBA exercised its power.

Appellants argue the trial court erred in determining an accounting has been provided appellants. They correctly note the stipulation of facts submitted by the parties did not cover the issues of contribution and accounting.[4] At the hearing on the motions for summary judgment, the trial court indicated that appellants' counsel had stated he needed time for discovery concerning the amount of liability, that the motions for summary judgment were to determine issues presented by the stipulation, and that the court would not then consider the portion of appellee's motion involving the amount due. Appellants point to the fact that the affidavits were not filed until the briefs supporting the motions for summary judgment were filed and allege they were not given time to determine the truth of the affidavits. Also they contend discrepancies in the matters stated in the affidavits have been pointed out and questions of fact have been raised.

Appellee responds that the trial court simply determined subsequent to the hearing that appellee was not limited to the liability issue and that the court, after reviewing the motions, briefs, affidavits and exhibits, found no genuine issue of material fact existed as to the amount. Appellee argues summary judgment was properly awarded concerning the accounting issue. F.R.Civ.P. No. 56(c).

We agree with appellee that summary judgment concerning the accounting was properly awarded. An accounting problem has been held especially suited to disposition by summary judgment. *Atlantic States Const. Co. v. Robert E. Lee & Co.,* 406 F.2d 827 (4th Cir. 1969). Appellants had had discovery of the files in appellee's possession; yet, they submitted nothing to substantiate their claims of improper crediting of collateral or other discrepancies in the accounting provided via the affidavits and exhibits. Appellants relied upon allegations in briefs which the trial court cor-

4. We find no error in the trial court's determination of the contribution issue based upon the limited stipulation. Appellants baldly assert this to have been error; however, no facts are

rectly found unconvincing. *See* F.R.Civ.P. No. 56(e). Appellee submitted affidavits and exhibits; consequently, the stipulation of facts did not contain the only evidence before the court. We cannot say the trial court erred in determining a sufficient accounting had been provided. Having examined these contentions and the others raised by appellants as to the summary judgment on accounting, we find no error.

AFFIRMED.

in dispute as to the contribution issue, at least as they might relate to the basis for our decision.