PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 1/17/97**

FOR THE TENTH CIRCUIT

---

TELE-COMMUNICATIONS, INC., AND )
SUBSIDIARIES, AND TCI DEVELOPMENT )
CORP., SUCCESSOR TO TELE- )
COMMUNICATIONS INVESTMENTS, )
INC. AND SUBSIDIARIES, AND ATHENA )
COMMUNICATIONS CORP. AND )
SUBSIDIARIES, )
                                 )
          Petitioners-Appellees,       )          No. 95-9003
                                   )
      v.                            )
                                     )
COMMISSIONER OF INTERNAL )
REVENUE, )
          Respondent-Appellant.    )

---

Appeal from the United States Tax Court
(T.C. Memo. 1991-82)

---

Roger J. Jones (William A. Schmalzl and Thomas Kittle-Kamp, with him on the brief) of Mayer, Brown & Platt, Chicago, Illinois for Petitioners-Appellees.

Stephen W. Parks (Jonathan S. Cohen, with him on the brief) of Department of Justice Tax Division, Washington, District of Columbia for Respondent-Appellant.

---

Before **ANDERSON** and **McWILLIAMS**, Circuit Judges, and **HOLMES**, District Judge.*

---

**HOLMES**, District Judge.

---

     * The Honorable Sven Erik Holmes, United States District Judge for the Northern District of Oklahoma, sitting by designation.

The Commissioner of Internal Revenue (the "Commissioner") appeals from the Tax Court's grant of summary judgment to Tele-Communications, Inc. ("TCI"), and its subsidiaries, and other affiliated corporations (collectively, "Taxpayers"). In the underlying lawsuit, Taxpayers brought an action in the Tax Court seeking a redetermination of deficiencies in income tax as calculated by the Commissioner for taxable years 1978, 1979, 1980 and 1981. Taxpayers filed a motion for partial summary judgment arguing that pursuant to former section 334(b)(2) of the Internal Revenue Code (the "Code")[1] the full amount of section 1245 depreciation recapture recognized upon the liquidation of a subsidiary should be used to determine the parent corporation's basis in the assets received in the liquidation. The Tax Court held that the full amount of such depreciation recapture should be taken into account and granted Taxpayers' motion for partial summary judgment.[2] We affirm.

## I.

For purposes of the present appeal the facts are not in dispute. TCI is a cable television operator and the parent corporation of a consolidated group. In August 1980, one of TCI's wholly owned subsidiaries, CTCI of Ohio, Inc. ("CTCIO"), purchased 100 percent of the stock of Wheeling Antenna Co. ("Wheeling") for cash in the amount of $12,600,000. Wheeling and its two wholly owned subsidiaries, Wellsburg Cable Company, Inc. ("Wellsburg") and Brooke Cable Company, Inc. ("Brooke"), were engaged in the cable television business in several states.

---

[1] Unless otherwise indicated all references in this opinion are to sections of the Code as in effect for the taxable years in issue here. Pursuant to the Tax Equity and Fiscal Responsibility Act of 1982 and the Tax Reform Act of 1986, section 334(b)(2) was amended in its entirety such that the language at issue in this appeal is no longer in effect.

[2] All remaining issues not addressed in the motion for partial summary judgment below were resolved by stipulation of the parties.

2

CTCIO acquired the Wheeling stock with the intent to liquidate Wheeling, Wellsburg, and Brooke in accordance with the provisions of section 334(b)(2) then in effect. On November 2, 1981, Wheeling liquidated Wellsburg and Brooke, and, in turn, Wheeling was liquidated by CTCIO. As a result of Wheeling's liquidation, Wheeling was required, pursuant to section 1245 of the Code, to include an amount of depreciation recapture in its taxable income. CTCIO calculated the depreciation recapture to be $2,407,119. At the time Wheeling was liquidated, CTCIO had held the Wheeling stock for approximately 15 months.

Under section 334(b)(2), CTCIO treated its acquisition of the Wheeling stock and subsequent liquidation of Wheeling as a purchase of Wheeling's assets. Pursuant to section 334(b)(2), CTCIO's basis in the assets received from Wheeling in the liquidation was equal to the amount that CTCIO paid for the Wheeling stock, as adjusted pursuant to the applicable regulations. Treas. Reg. 1.334-1(c)(4)(v) requires an increase in stock basis equal to the amount of Wheeling's earnings and profits for the interim period between the date that CTCIO acquired the Wheeling stock and the date that Wheeling was liquidated. See Treas. Reg. § 1.334-1(c)(4)(v)(a)(2).

On their income tax return, Taxpayers computed the basis of the assets that CTCIO received upon the liquidation of Wheeling by including in Wheeling's interim earnings and profits depreciation recapture in the amount of $2,407,119. This resulted in an increase of $2,407,119 to CTCIO's basis in its Wheeling stock and a corresponding increase in the basis of the assets that CTCIO received upon the liquidation of Wheeling. The Commissioner determined that only depreciation recapture attributable to depreciation allowable after August 1980, or $286,030, was includable in Wheeling's interim earnings and profits for purposes of computing the upward adjustment in CTCIO's adjusted basis in its Wheeling stock. Thus, the Commissioner reduced CTCIO's basis in the assets it received on the liquidation of Wheeling.

3

Taxpayers disputed the Commissioner's determination and filed a motion for partial summary judgment in the Tax Court below. Taxpayers' motion presented the question whether, for purposes of determining CTCIO's basis in the assets distributed to it upon the liquidation of Wheeling pursuant to section 334(b)(2) and Treas. Reg. 1.334-1(c)(4)(v)(a)(2), the full amount of depreciation recapture income recognized by Wheeling, pursuant to section 1245, should be included in Wheeling's "earnings and profits" for the period during which CTCIO held the Wheeling stock.

In the Tax Court, the Commissioner asserted that Treas. Reg. § 1.334-1(c)(4)(v) requires that stock basis be increased only for earnings and profits of a subsidiary during the interim period between acquisition of the stock of the subsidiary and its liquidation. The Commissioner argued, in her brief below, that this provision of the regulations should not be interpreted to allow an increase in interim earnings and profits attributable to the recapture of depreciation that was allowable to Wheeling prior to CTCIO's acquisition of the Wheeling stock. The Commissioner further contended below that her construction of this provision "is more consistent with the purpose of the regulation than [the taxpayers']." Resp. Reply Br. at 4. This contention was supported with a two page example demonstrating how the opposing constructions worked in practice. The Commissioner also "attach[ed] considerable significance to the fact that Treas. Reg. 1.334-1(c)(4) was promulgated in its present form in 1955, some seven years prior to the enactment of Section 1245." Id. at 7.

The Tax Court rejected the Commissioner's argument, noting that it had rejected precisely the same contention in two previous cases, R.M. Smith, Inc. v. Commissioner, 69 T.C. 317 (1977) and First National State Bank of New Jersey v. Commissioner, 51 T.C. 419 (1968). The Tax Court concluded that because the full amount of depreciation recapture was includable in the subsidiary's taxable income for the interim period, the same amount was includable in its interim earnings and profits.

4

In the instant case, the Commissioner "do[es] not concede the correctness of the [Tax C]ourt's reasoning, [she] do[es] not contest that aspect of the Tax Court's decision on this appeal." Br. of Appellant at 18 n.8. Rather, the sole basis of the Commissioner's current appeal can be found in the penultimate paragraph of brief she submitted to the Tax Court,[3] which paragraph states in its entirety:

> In the alternative, respondent contends that earnings and profits for the interim period must be computed by using the so-called substituted basis rules found in Treas. Reg. 1.334-1(c)(4)(vi). Those regulations require that, for purposes of computing interim period earnings and profits, gain or loss from sales or exchanges of property held by the acquired corporation on the date of purchase, as well as "any other items determined by reference to basis of such property" shall be computed by substituting for such basis a new basis equal to the portion of the adjusted basis of the acquired stock allocable to such property. Treas. Reg. 1.334-1(c)(4)(vi)(a). Section 1245 recapture income constitutes an item determined by reference to the basis of property held on the date of acquisition. The substituted basis rules require that property giving rise to depreciation recapture must receive a new, substituted basis at liquidation equal to its relative fair market value at acquisition. Application of the substituted basis rules, therefore, effectively eliminates pre-acquisition depreciation and, of necessity, Section 1245 recapture income.

Id. at 8-9. In one paragraph of an eleven page order, the Tax Court summarily rejected this passing contention and held that subdivision six applies only to property held by the subsidiary on the date its stock was purchased with respect to which a gain or loss "from sales or exchanges" has been incurred, and that the provision therefore had "no application to the instant case."

_____

[3]In her opening brief on appeal, the Commissioner states that "[i]n the Tax Court, the Commissioner argued, inter alia, that the amount of depreciation recapture includable in Wheeling's interim earnings and profits under subdivision five of the regulation must be computed using the substituted basis rules of subdivision six." Appellant's Opening Br. at 17. The Commissioner then adds a footnote stating that she "also contended, in the alternative, that the phrase 'earnings and profits' in subdivision five . . . should be read to refer only to earnings and profits properly attributable to the interim period . . . ." Id. at 17 n.8 (emphasis added). By referring to her previous argument in chief in a footnote, while advancing a new argument in chief in the text, the Commissioner does not fairly depict her prior position in this case.

II.

Summary judgment is appropriate where there is no genuine issue as to any material fact, See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Insurance Corp., 805 F.2d 342, 345 (10th Cir. 1986), cert. denied, 480 U.S. 947 (1987), and "the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c).

We review the Tax Court's summary judgment decision de novo. See Housing Auth.v. United States, 980 F.2d 624, 628 (10th Cir. 1992).

III.

Generally, an appellate court will not consider an issue raised for the first time on appeal. Tele-Communications, Inc. v. Commissioner of Internal Revenue, 12 F.3d 1005, 1007 (10th Cir. 1993). It is well-settled that "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." Singleton v. Wulff, 428 U.S. 106, 121 (1976). Review of issues not raised below would require us frequently to remand for additional evidence gathering and findings; would undermine the need for finality in litigation and conservation of judicial resources; would often have this court hold everything accomplished below for naught; and would often allow a party to raise a new issue on appeal when that party invited the alleged error below. Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993).

This rule is particularly apt when dealing with an appeal from a grant of summary judgment, because the material facts are not in dispute and the trial judge considers only opposing legal theories. Anschutz Land and Livestock Co., Inc. v. Union Pac. R.R. Co., 820 F.2d 338, 344 n.5 (10th Cir. 1987). Propounding new arguments on appeal in an attempt to

6

prompt us to reverse the trial court undermines important judicial values. In order to preserve the integrity of the appellate structure, we should not be considered a "second-shot" forum, a forum where secondary, back-up theories may be mounted for the first time. Id. Parties must be encouraged to "give it everything they've got" at the trial level. Id. Thus, an issue must be "'presented to, considered [and] decided by the trial court'" before it can be raised on appeal. See Lyons 994 F.2d at 721 (quoting Cavic v. Pioneer Astro. Indus., 825 F.2d 1421, 1425 (10th Cir. 1987)) (alteration in original).

IV.

In Lyons, we determined "what kind of specificity is required in the trial court in order to preserve an issue for appeal." 994 F.2d at 721. The question in this case is whether the Commissioner's presentation of her argument to the Tax Court satisfies the requirements set forth in Lyons. In Lyons we stated that "[t]he touchstone on this issue is that 'vague, arguable references to [a] point in the district court proceedings do not . . . preserve the issue on appeal.'" Id. at 721 (quoting Monarch Life Ins. Co. v. Elam, 918 F.2d 201, 203 (D.C. Cir. 1990)) (alterations in original). Pleadings and motions in the trial court will be given a liberal reading, but we "have consistently turned down the argument that the raising of a related theory was sufficient." Id. at 722 (emphasis added); see also Grasmick v. Otis Elevator Co., 817 F.2d 88, 89-90 (10th Cir. 1987) (negligent failure to warn claim does not preserve negligent design claim). Similarly, we have held that "where an issue is raised but not pursued in the trial court, it cannot be the basis for the appeal." Lyons, 994 F.2d at 722; see also Northern Natural Gas Co. v. Hegler, 818 F.2d 730, 734 (10th Cir. 1987) (argument that could be inferred from a trial exhibit, but was not otherwise discussed could not be argued on appeal); Gilbert v. Medical Economics Co., 665 F.2d 305, 310 (10th Cir. 1981) (while "vilification" claim, under a liberal reading, encompasses a "false light" claim, the

7

plaintiff never indicated to the trial court that she was pursuing a "false light" theory, and therefore could not argue the theory on appeal).

There is no general rule regarding whether a party should be allowed to raise a question for the first time on appeal. Singleton, 428 U.S. at 121. As we found in Lyons, "there are many ways in which a case may present what Singleton describes as 'issues not passed upon below.'" Lyons, 994 F.2d at 722. Examples of such factual situations include:

> a bald-faced new issue . . .[;] a situation where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial . . . [;] a theory that was discussed in a vague and ambiguous way . . . [;] issues that were raised and then abandoned pre-trial . . . [; and] an issue raised for the first time in an untimely motion . . . . These are all different aspects of the same principle that issues not passed upon below will not be considered on appeal. As such, they are governed by the same law.

Id. Other circuit courts are in accord when presented with similar facts. See, e.g., McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review."); Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners, 921 F.2d 122, 124-25, n. 1 (7th Cir. 1990) (holding that "[a]rguments raised in the District Court in a 'perfunctory and underdeveloped . . . manner' are waived on appeal," where the party's "argument to the District Court on this issue consisted of a single, poorly worded statement"); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (holding that appellate courts should not permit "fleeting references to preserve questions on appeal"), cert. denied, 475 U.S. 1088 (1986).

In the present case, the Commissioner's brief to the Tax Court contains only a single paragraph addressing the issue raised in this appeal. Only the final three sentences in this paragraph make any argument whatsoever. On appeal, this fleeting contention becomes ten pages of argument, replete with examples and citations to purportedly relevant legislative history, regulatory intent and case law, none of which was presented to the Tax Court below.

Furthermore, the cursory statement below fails to address the previous decision by the Tax Court in R.M. Smith, Inc. v. Commissioner of Internal Revenue, 69 T.C. 317, 326 (1977), wherein the Tax Court stated:

> [i]t should be apparent that the recapture provisions of section 1245 would have been applied no differently in this case had the subsidiary been liquidated immediately upon the acquisition of its stock by petitioner. Since the section 1245 recapture in this case is not affected by the delay in liquidation, there is no logical justification for claiming that the application of that section should bring into play the basis rules of section 1.334-1(c)(4)(vi), Income Tax Regs. That provision of the regulations is intended to equalize events which occur during the interim period by having all calculations made with reference to the same point in time—the date of the stock acquisition.

Id. at 327-28. In her opening brief on appeal to this Court, the Commissioner assails the reasoning of the Tax Court's opinion in R.M. Smith. Appellant's Opening Br. at 25. The Commissioner, however, never indicated to the Tax Court that she now views the substituted basis rules differently from the position she took in R.M. Smith. The perfunctory presentation of the substituted basis argument in the Tax Court deprived that court of the opportunity to analyze and rule on this issue now raised in detail for the first time on appeal.

We confronted similar circumstances in United States v. Immordino, 534 F.2d 1378 (10th Cir. 1976). In that case, two guarantors of a note argued that they had not consented to the release of their co-guarantors. Id. at 1381. We found that "[o]n appeal, for the first time, appellants give the basis for th[e] argument" that the four guaranty instruments evidenced only one guaranty. Id. (emphasis added). Id. Thus, we held in Immordino that "[t]his entire contention must be rejected. Matters not presented to the trial court for consideration generally will not be considered by this Court. Nothing here takes this contention outside this normal limitation on review." Id. (citations omitted).

While the Commissioner briefly stated an alternative theory in her brief to the Tax Court, she failed to develop that theory prior to this appeal. The Commissioner's substituted basis argument is "a theory that was discussed in a vague and ambiguous way" below.

9

<u>Lyons</u>, 994 F.2d at 722. The Commissioner failed to state her theory below with the required specificity. <u>See</u> <u>Lyons</u>, 994 F.2d at 721-22. Thus, we hold that the Commissioner failed to preserve for appeal the sole issue raised in this case. Furthermore, there is no reason to apply one of the exceptions to the general rule. <u>See</u> <u>Singleton</u>, 428 U.S. at 121 (citing as appropriate exceptions circumstances "where the proper resolution is beyond any doubt, . . . or where 'injustice might otherwise result'"); <u>Stahmann Farms, Inc. v. United States</u>, 624 F.2d 958, 961 (10th Cir. 1980) (discretion exercised where the issue was purely one of law, and where the issue was a ground for affirming, not reversing, the trial court).

For the reasons set forth above, we uphold the Tax Court's grant of partial summary judgment to TCI.

AFFIRMED.