**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MARK JAY KRUM,

     Plaintiff Counterclaim Defendant -
Appellant,

v.

CHUBB LIMITED; CHUBB GROUP
HOLDINGS INC.; CHUBB INA
HOLDINGS INC.; FEDERAL
INSURANCE COMPANY; STEVEN W.
MORTENSEN; MATTEW WITCHER;
CELIA SANTANA; DALE
KRUPOWICZ; PERSONAL RISK
MANAGEMENT SOLUTIONS, LLC,

     Defendants - Appellees,

and

GREAT NORTHERN INSURANCE
COMPANY,

     Defendant Counterclaimant -
Appellee.

No. 23-1262
(D.C. No. 1:20-CV-03616-RM-NRN)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **EBEL**, and **MORITZ**, Circuit Judges.

_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

This summary-judgment appeal stems from an insurance claim that Mark Krum filed with Great Northern Insurance Company after his vacation home in Colorado sustained extensive water damage due to a fire-sprinkler failure. Great Northern paid him over $4 million in insurance benefits for the damage, but Krum believed that he was entitled to additional benefits under the insurance policy. So Krum sued Great Northern, seeking damages for breach of contract and bad faith. He also sued two insurance brokers, Celia Santana and Dale Krupowicz (together, brokers), asserting claims for negligence and breach of fiduciary duty. The district court granted summary judgment to Great Northern and the brokers, and Krum appeals. Because we agree with the district court that no reasonable jury could find for Krum on any of his claims, we affirm.

## Background

In 2010, Krum bought a luxury residential property—"the World's Greatest Ski Lodge," according to him—in Beaver Creek, Colorado, which he later insured under a policy from Great Northern procured by the brokers. Aplt. Br. 1. On Christmas Eve of 2019, a fire-suppression sprinkler head inside the vacation home failed and released hundreds of gallons of liquid, causing extensive damage to the property. Krum filed an insurance claim with Great Northern, seeking coverage under the policy for the damage. Krum and Great Northern resolved most of the claim, with Great Northern paying out over $4 million in exchange for a limited mutual release of its liability. But they disputed, among other things, the extent of Krum's coverage for "additional living expenses," which includes both "loss of fair rental value" and

2

"extra living expenses." App. vol. 6, 1561. Krum maintained that the policy entitles him to approximately $2 million in coverage for total additional living expenses. But Great Northern refused to provide any fair-rental-value coverage on the ground that Krum failed to show he "usually rented" the property to others, as required by the policy. *Id.* at 1562. And it paid him only about $22,500 in extra-living-expenses benefits to cover his incurred expenses. Given this disagreement, the limited mutual release did "not include, and [Krum] reserve[d], his claim[] for" fair-rental-value and extra-living-expenses coverage. App. vol. 18, 2875.

Krum, an attorney proceeding pro se, then sued Great Northern and the brokers in federal court.[1] As relevant here, Krum brought claims against Great Northern for breach of contract, common-law bad faith, and statutory bad faith. In particular, Krum asserted that Great Northern breached the policy by refusing to pay the fair-rental-value and extra-living-expenses benefits he sought and that it "unreasonably and in bad faith delayed, refused[,] and denied" benefits owed under the policy. App. vol. 1, 137–38. Krum also brought claims against the brokers for negligence and breach of fiduciary duty, asserting that they negligently failed to procure a policy with unlimited coverage for additional living expenses and misled him about the coverage provided under the policy.[2]

---

[1] Krum also sued various other defendants, but his claims against those defendants are not at issue on appeal.

[2] Krum also brought a negligent-misrepresentation claim against the brokers, and he asserted additional claims against Great Northern for fraudulent misrepresentation, violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 to -115, and declaratory relief. The district court resolved Krum's

After discovery, Great Northern and the brokers moved for summary judgment. The district court granted Great Northern's motion, determining no reasonable jury could find that Great Northern breached the policy or acted in bad faith. The district court also granted the brokers' motion on causation grounds, concluding no reasonable jury could find Krum incurred any damages that were caused by the brokers' alleged misconduct.

Krum appeals.[3]

## Analysis

We review orders granting summary judgment de novo, applying the same standard as the district court. *Auto-Owners Ins. Co. v. Csaszar*, 893 F.3d 729, 733–34 (10th Cir. 2018). Under that standard, summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). Krum challenges the district court's summary-judgment rulings on (1) his breach-of-contract and bad-faith claims against Great Northern and (2) his negligence and

request for declaratory relief, which asked it to compel appraisal and appoint a third appraiser under the policy's appraisal provision, by granting his motion seeking such appointment. And the district court later ruled against Krum on the remaining additional claims at summary judgment. Because Krum does not challenge the district court's summary-judgment rulings on those claims, we do not address them.

[3] Krum continues to represent himself on appeal, though he is now also represented by co-counsel.

breach-of-fiduciary-duty claims against the brokers.[4] We consider each in turn.[5]

## I.      Great Northern

### A.      Breach of Contract

Krum first argues that his breach-of-contract claim should survive summary

judgment. Under Colorado law, an insurance policy is a contract. *Rocky Mountain*

*Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020).

And to establish breach of contract in Colorado, Krum must show "(1) the existence

of a contract; (2) performance by [him] or some justification for nonperformance;

(3) failure to perform the contract by [Great Northern]; and (4) resulting damages to

[him]." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations

omitted).

When interpreting an insurance policy to determine whether a breach occurred,

Colorado courts apply "general principles of contract interpretation." *Owners Ins.*

*Co. v. Dakota Station II Condo. Ass'n*, 443 P.3d 47, 51 (Colo. 2019). Chief among

those principles is that courts should enforce the intent and reasonable expectations

of the parties as expressed in the policy's plain language, giving each word its

ordinary meaning. *Id.* If the language's meaning is unambiguous—that is, not

---

[4] Krum also asserts in passing that his breach-of-contract claims against the brokers "should be reinstated," but he never asserted any such claims against them. Aplt. Br. 59.

[5] In so doing, we follow the parties' lead and apply Colorado's substantive law. *See Csaszar*, 893 F.3d at 734 (noting that when jurisdiction rests on diversity, "we apply the substantive law of the forum state" (quoting *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015))).

"susceptible on its face to more than one reasonable interpretation"—courts must give effect to that meaning. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). But "[a]ny ambiguity in an insurance policy [must be] construed in favor of providing coverage to the insured." *Id.*

Krum argues a reasonable jury could find that Great Northern breached the policy by refusing to provide the maximum coverage available for fair rental value and extra living expenses under the policy's additional-living-expenses provision. This provision states that "under certain conditions when [the insured's] house or other permanent structure cannot be lived in during [the insured's] usual vacation occupancy because of a covered loss . . . , [Great Northern] provide[s] coverage for additional living expenses[,] which consists of extra living expenses, loss of fair rental value, and forced[-]evacuation expenses." App. vol. 6, 1561. "The maximum amount [Great Northern] will pay for all additional living expenses combined for each occurrence is 30% of the amount of house coverage . . . for the location at which the loss occurs." *Id.*

### 1.     Fair Rental Value

We begin with coverage for fair rental value, which Great Northern denied in its entirety. The policy's fair-rental-value provision states:

> If a covered loss makes a part of [the] house or other permanent structure which [the insured] usually rent[s] to others uninhabitable, [Great Northern] cover[s] its fair rental value during the period of time it is usually rented for the reasonable amount of time required to restore it to a habitable condition. [Great Northern] cover[s] fair rental value for up to 15 days, even if the policy period ends during that time.

*Id.* at 1562. At summary judgment, the district court determined that no reasonable jury could find Krum was entitled to fair-rental-value coverage because he failed to show that he "usually rented" the property (or any part of it) to others. While the record contained evidence that Krum had rented the property in the past, the district court noted that the last time he did so was in January 2016—nearly four years before the covered loss. And that lapse, the district court determined, precluded a finding that Krum usually rented the property.

On appeal, Krum initially asserts that whether he "usually rented" the property is immaterial because this phrase in the policy does not impose a condition precedent to fair-rental-value coverage. But as Great Northern points out, Krum forfeited that argument by failing to make it below and then waived it on appeal by failing to argue for plain error.[6] *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127–28 (10th Cir. 2011). And in any event, the argument fails on its merits. As Krum all but concedes in his reply brief, the policy plainly provides that he is entitled to fair-rental-value coverage only "during the period of time [his property] is *usually rented*." App. vol. 6, 1562 (emphasis added).

As to the "usually rented" issue itself, Krum does not dispute that the last time

---

[6] Krum passingly suggests in his reply brief that he had no opportunity to address the "usually rented" requirement below because Great Northern did not argue it applied; in Krum's view, the district court raised the issue sua sponte. But Krum mischaracterizes the record, which shows Great Northern specifically argued in its motion for summary judgment that fair-rental-value "coverage was not triggered [here] because [Krum] had not 'usually rented' the house to others for four years prior to the loss." App. vol. 6, 1445.

he rented the property was in January 2016. But he argues that his failure to rent the property for nearly four years before the covered loss is not dispositive. In Krum's view, a jury could determine that, despite this lapse, he satisfied the "usually rented" requirement because the evidence shows (1) he bought and renovated the property specifically to rent it; (2) he rented the property for 99 days in the first nine years he owned it, earning over $650,000 in rent; (3) he continuously advertised the property for rent online; (4) he periodically engaged brokers to help him rent the property; and (5) he failed to secure renters for two ski seasons in the four years leading up to the loss in part due to historically bad snowfall. But we agree with the district court that "the plain and ordinary meaning of the phrase 'usually rent to others'" does not "contemplate[] coverage where the prior rentals occurred four or more years ago and have not happened since." App. vol. 20, 3219. While Krum may have intended, and even attempted, to rent the property, he simply was not habitually or ordinarily renting it at the time of the covered loss. *See* Webster's Third New International Dictionary 2524 (2002) (defining "usually" as (1) "by or according to habit or custom: [habitually], [customarily]"; and (2) "more often than not[,] most often[, or] as a rule: [ordinarily]"); *Usual*, Black's Law Dictionary (12th ed. 2024) (defining "usual" as "[o]rdinary; customary").[7]

Perhaps anticipating this result, Krum next argues that this conclusion fails to

---

[7] The policy does not define "usually." And when a term in an insurance policy is undefined, we may look to dictionary definitions to discern its plain meaning. *See Renfandt v. N.Y. Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018).

give effect to the plain and ordinary meaning of the verb "rent." He maintains that "rent," which is not defined in the policy, refers not only to actual "rental transactions" but also to "the practice of holding a property out for rent" (or at the very least, he says, the word is susceptible to both interpretations and is therefore ambiguous). Aplt. Br. 34. According to Krum, then, "a homeowner 'usually rents' their property when they *normally offer* the property for rent." *Id.* at 32. And because he did that here, Krum asserts, he is entitled to coverage for the property's fair rental value even though he failed to secure any renters in nearly four years.

We disagree. To be sure, some insurance policies do cover the fair rental value of the part of the property that the insured "rent[s] to others or hold[s] for rental." *DePhelps v. Safeco Ins. Co.*, 65 P.3d 1234, 1237 (Wash. Ct. App. 2003) (emphasis omitted) (quoting insurance policy); *see also, e.g.*, *Weintraub v. State Farm Fire & Cas. Co.*, 996 So. 2d 1195, 1197 (La. Ct. App. 2008) ("If a[n] . . . [i]nsured [loss] causes that part of the residence premises *rented to others or held for rental* by you to become uninhabitable, we cover its fair rental value." (emphasis added) (quoting insurance policy)). But not this one. By its plain terms, the policy here provides fair-rental-value coverage only if the property (or part of it) is "usually rented" to others. App. vol. 6, 1562. And the verb "rent" means "to grant the possession and enjoyment of in exchange for rent" or "to take and hold under an agreement to pay rent." Merriam-Webster's Collegiate Dictionary 1054 (11th ed. 2004); *see also Rent*, Black's Law Dictionary (12th ed. 2024) (similarly defining the verb "rent" as "[t]o pay for the use of another's property"). So to obtain fair-rental-value coverage, Krum

9

must show that the property was usually possessed or used by others in exchange for payment. Yet as discussed, Krum has offered no such evidence here.

In short, we endorse the district court's interpretation of the fair-rental-value provision in the policy, which gives effect to the plain language of the phrase "usually rented." And because Krum has failed to show that he usually rented the property, we agree with the district court that no reasonable jury could find Great Northern breached the policy by declining to cover the property's fair rental value.

### 2.    Extra Living Expenses

We now turn to the policy's coverage for extra living expenses:

> If a covered loss makes [the] house or other permanent structure uninhabitable during [a] usual vacation occupancy, [Great Northern] cover[s] the reasonable increase in [the insured's] normal living expenses that is necessary to maintain [the] household's usual standard of living, including the boarding of domestic animals not primarily owned or kept for business use. . . . [Great Northern] cover[s] these extra living expenses for up to 60 days, even if the policy period ends during that time.

App. vol. 6, 1561–62. Recall that Great Northern paid Krum approximately $22,500 to cover the increase in normal living expenses he incurred. At summary judgment, the district court determined no reasonable jury could find that Krum was entitled to additional extra-living-expenses benefits because "nowhere [did he] identify any evidence that he incurred [a further increase in his normal living expenses] or submitted appropriate verification." App. vol. 20, 3218.

Challenging this analysis, Krum argues that he need not actually *incur* extra living expenses to obtain such benefits. But once again, as Great Northern notes,

Krum has waived this issue: he did not raise it below and does not argue for plain error on appeal.[8] *See Richison*, 634 F.3d at 1127–28. In any event, Krum's argument lacks merit. The extra-living-expenses provision plainly requires an "increase in [the insured's] normal living expenses" to trigger coverage. App. vol. 6, 1561. And a reasonable increase in such expenses can only occur if the insured incurs—that is, "suffer[s] or bring[s] on oneself"—some financial liability or expense. *Incur*, Black's Law Dictionary (12th ed. 2024); *see also United States v. Didier*, 585 F. App'x 667, 668 (9th Cir. 2014) (interpreting identical policy language as imposing "requirement of an 'increase,'" meaning insured must "actually incur[]" increase in normal living expenses to receive benefits under extra-living-expenses provision).[9] In other words, if Krum incurred no financial liability, then there was no "increase" in expenses for Great Northern to cover. And because Krum has offered no evidence that he incurred any further increase in normal living expenses, the district court did not err in concluding that no reasonable jury could find Great Northern breached the policy by

---

[8] Krum maintains that he properly preserved the issue because he asserted below that Great Northern breached the policy "by refusing to pay for maximum [e]xtra [l]iving [e]xpense[s]." Rep. Br. 8 (quoting App. vol. 16, 2679). But this single sentence, which appears in the introduction section of Krum's summary-judgment response brief, is far too "perfunctory and underdeveloped" to preserve the specific textual argument Krum now advances on appeal. *In re Rumsey Land Co.*, 944 F.3d 1259, 1271 (10th Cir. 2019) (quoting *Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997)). And the argument section of the brief entirely fails to address Great Northern's contention that Krum was not entitled to additional extra-living-expenses benefits because he did not show that "he incurred any further increase in normal living expenses." App. vol. 6, 1443.

[9] We cite this unpublished case for its persuasive value. *See* Fed. R. App. 32.1(a); 10th Cir. R. 32.1(A).

failing to pay additional extra-living-expenses benefits.[10]

One final point bears mentioning before we move on from the breach-of-contract claim. Below, the parties disputed whether the policy's 60-day limit on extra-living-expenses coverage applies to Krum. The district court declined to resolve this dispute on ripeness grounds, reasoning that even if the limit did not apply, it would have no effect on this case given Krum's failure to show that he was "entitled to any [extra-living-expenses] benefits beyond what he received." App. vol. 20, 3219. On appeal, Krum insists the issue is ripe because Great Northern specifically told him that it would cover no more than 60 days of food and dog-boarding expenses. But Krum cites no record evidence suggesting that he actually incurred more than 60 days of such expenses. So we agree with the district court that, regardless of what Great Northern may have told Krum, "adopting [his] proposed interpretation . . . would not change the outcome as the matter now stands." App. vol. 20, 3219. The district court did not err in declining to resolve the issue.

---

[10] Resisting this conclusion, Krum argues that Great Northern denied his requests for additional extra-living-expenses benefits without justification and that "nothing required Krum to incur [extra living expenses] . . . after [Great Northern] *denied* them in order to maintain a breach-of-contract claim." Aplt. Br. 43. But Krum did not bring this anticipatory-repudiation argument below. And in any event, as the district court observed, Krum's summary-judgment response brief cites no "evidence supporting his contention that [any of his] requests were improperly denied"; instead, it "merely lists various requests he made for . . . hotel and housing accommodations that Great Northern purportedly denied." App. vol. 20, 3218; *see also Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (explaining that once party moving for summary judgment satisfies initial burden by pointing to lack of evidence on essential element of claim, burden shifts to nonmoving party to identify evidence "pertinent to the material issue" that "is significantly probative and would enable a trier of fact to find in the nonmovant's favor").

### B.    Bad Faith

Krum next argues that the district court should have denied summary judgment on his bad-faith claims. Colorado law "requires an insurer to treat an insured with good faith," and "the insurer can incur tort liability" if it breaches that duty. *Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020). To prevail on his common-law bad-faith claim, Krum must show that Great Northern "(1) acted unreasonably and (2) knew or recklessly disregarded the unreasonableness of its conduct." *Id.* And for the statutory tort, Krum must show that Great Northern "unreasonably delayed or denied payment of [covered] benefits, but [he] need not show knowing or reckless conduct." *Id.*; *see also* Colo. Rev. Stat. § 10-3-1115(1)(a). "The denial of benefits was unreasonable if [Great Northern] refused to pay 'a covered benefit without a reasonable basis for that action.'" *Sandoval*, 952 F.3d at 1236 (quoting § 10-3-1115(2)). And here, the district court determined that "the absence of evidence that Great Northern acted unreasonably [was] fatal" to Krum's bad-faith claims. App. vol. 20, 3221.

Krum argues that a reasonable jury could find Great Northern acted unreasonably in denying the fair-rental-value and extra-living-expenses coverage he sought. Recall that Great Northern denied Krum's request for fair-rental-value coverage because he failed to show that he "usually rented" the property to others. App. vol. 6, 1562. And it did not provide additional extra-living-expenses coverage because he did not show that he incurred any further "increase in [his] normal living expenses." *Id.* 1561. As explained above, these coverage decisions are supported by

the plain and ordinary language of the policy. And as the district court explained, Krum's mere disagreement with those decisions is insufficient to establish bad faith.[11] *See Sandoval*, 952 F.3d at 1236 (explaining that to prevail on common-law and statutory bad-faith claims, plaintiff must show insurer acted unreasonably). The district court thus properly granted summary judgment to Great Northern on Krum's bad-faith claims.

As a final matter, Krum asserts that the district court abused its discretion in affirming a magistrate judge's order denying his request to depose Great Northern's senior vice president after the discovery period closed. *See SEC v. Merrill Scott & Assocs.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (noting that we review district-court discovery rulings for abuse of discretion); *Souza v. Thurston*, 819 F. App'x 636, 640 (10th Cir. 2020) (noting that "in persuasive unpublished decisions," we have likewise reviewed for abuse of discretion district-court decisions affirming magistrate judges' discovery orders). But while Krum insists that he should have been allowed to

---

[11] Krum maintains that the record contains other evidence of unreasonable conduct, pointing to specific evidence that he says shows Great Northern unreasonably denied certain claims, failed to conduct diligent investigations, and engaged in various other "dilatory, dishonest, and unethical conduct" in handling his claims. Aplt. Br. 53. But Krum identified none of this evidence in his summary-judgment response brief; he merely asserted in a conclusory fashion that "Great Northern repeatedly denied, unreasonably delayed, and failed to approve reasonable [extra living expenses]" and that "Great Northern's entire course of conduct" was "relevant to its duty of good faith." App. vol. 16, 2695–96. This "perfunctory presentation" of Krum's bad-faith arguments "deprived [the district] court of the opportunity to analyze and rule on th[e] issue[s] now raised in detail for the first time on appeal." *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (first alteration in original) (quoting *Tele-Commc'ns*, 104 F.3d at 1234). We therefore decline to consider them for the first time here. *See id.*

conduct the deposition, he fails to explain, and we fail to see, how the district court based its "decision on either a clearly erroneous finding of fact or an erroneous conclusion of law" or "manifest[ed] a clear error of judgment." *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009). We thus find no abuse of discretion.

## II.    Brokers

Turning his attention to the brokers, Krum argues that his claims against them for negligence and breach of fiduciary duty should survive summary judgment. Under Colorado law, "insurance [brokers and] agents have a duty to act with reasonable care toward their insureds." *Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App. 2006). So when "an insurance broker or agent . . . agrees to obtain a particular form of insurance coverage for the person seeking such insurance," the broker or agent "has a legal duty to obtain such coverage or to notify the person of his failure or inability to do so." *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 243 (Colo. 1987). And here, Krum asserts that the brokers acted negligently by failing to procure an insurance policy with the "maximum" coverage he allegedly requested for fair rental value and extra living expenses. App. vol. 1, 135–36.

At summary judgment, the district court concluded that Krum could not prevail on his claims against the brokers because he failed to show that their alleged misconduct caused any damages. To prove causation, the district court explained, Krum needed to show that he would have received additional insurance benefits but for the brokers' conduct. *See Pete's Satire, Inc. v. Com. Union Ins. Co.*, 698 P.2d 1388, 1390–91 (Colo. App. 1985) ("[I]n assessing damages based on an insurance

15

agent's negligence and failure to procure coverage, the measure is the amount of coverage available had the policy been obtained as promised."), *aff'd sub nom. Bayly, Martin & Fay, Inc.*, 739 P.2d 239. And because Krum had offered no evidence that he was "entitled to any benefits that exceed[ed] the policy limits," the district court reasoned, "the possibility that he could have obtained *more* coverage (even unlimited coverage)" under a different policy was "insufficient to raise a genuine issue that he incurred damages that were caused by the [b]roker[s]." App. vol. 20, 3225 (emphasis added).

On appeal, Krum makes little effort to challenge the district court's analysis. At best, he reasserts his argument that he is entitled to fair-rental-value coverage and to additional benefits for extra living expenses. But for the reasons already discussed, we reject that position. Krum also argues for the first time on appeal that he can prove causation because no policy with "unlimited" fair-rental-value and extra-living-expenses coverage would include the conditions to coverage contained in the policy. Aplt. Br. 60. In other words, Krum contends that had the brokers obtained a policy with the unlimited coverage he sought, his insurer would have had no reason to deny coverage. But because Krum forfeited this argument below and fails to argue plain error on appeal, we decline to consider it. *See Richison*, 634 F.3d at 1127–28. We accordingly discern no error in the district court's decision to grant summary judgment to the brokers.

**Conclusion**

Because no reasonable jury could find for Krum on any of his claims, we affirm the district court's order granting summary judgment to Great Northern and the brokers.

Entered for the Court


Nancy L. Moritz
Circuit Judge