## No. 10,287.

### PROVIDENCE WASHINGTON INSURANCE CO. *v.* GULINSON, ET AL.

Decided May 7, 1923.

Action on fire insurance policy.   Judgment for plaintiffs.

### *Reversed.*

1.   INSURANCE—*Fire Loss—Appraisers.*   Natural justice requires that every arbitrator or appraiser should be present or have notice when an award is made, and the power vested in two of a board of three to make an award, does not justify them in ignoring the third.

2.   *Fire Insurance Loss—Award.*   Evidence reviewed and the award of appraisers in adjusting a fire loss. held invalid under the terms of the policy.

3.   CONTRACTS—*Construction.*   Contracts should be enforced as made.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. SYLVESTER G. WILLIAMS, for plaintiff in error.

Mr. H. W. SPANGLER, Mr. PHILIP HORNBEIN, for defendants in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

GULINSON, ET AL., had judgment against the plaintiff in error for $3,000, the full amount of a fire insurance policy. The company claims there should have been a deduction by virtue of the familiar eighty per cent clause, and brings error.

The said clause is as follows:

"In consideration of the rate at and form under which this policy is written, it is expressly stipulated and made a condition of this contract that this company shall be held

liable for no greater proportion of any loss than the amount hereby insured bears to eighty per cent of the actual cash value of the property described herein at the time when such loss shall happen."

The purpose of this clause is to compel insurance up to 80 per cent and so prevent full recovery of partial losses on payment of small premiums and thus to enable the insurer to carry the insurance at a lower rate.

The policy also contained the following clauses:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused * * * said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided, * * *."

"In the event of disagreement as to the amount of loss, the same shall as above provided be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss, * * * and the loss shall not become payable until sixty days after * * * an award by appraisers when appraisal has been required."

After the fire the parties entered into a written agreement appointing one Klatzkin, named by Gulinson, and one Lehr, named by the company, to "appraise and ascertain the sound value of and the loss upon the property damaged and destroyed. * * * Provided, * * * That the said appraisers shall first select a competent and disinterested umpire who shall act with them in matters of difference only. The award of any two of them, made in writing, in accordance with this agreement shall be binding upon both

parties to this agreement as to the amount of such loss."
* * *  and further:

"* * *  that in determining the sound value and the loss or damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor."

The insured building was damaged by fire, the parties could not agree on the amount of the loss, and Klatzkin and Lehr could not agree. Before or after their failure to agree they chose one Judelovitz to act as umpire. The three visited the property together. Judelovitz and Lehr agreed on the sum of $3016, but Judelovitz regarded that as the damage and Lehr as cost of repairs. They could not agree on the cost of constructing the building. Judelovitz fixed it at $7800, and Lehr, it is claimed, at about $20,000. Neither could they agree as to the amount of depreciation, nor, of course, upon the sound value. They separated without agreement or conclusion and the three never met again. After that Klatzkin, Judelovitz, Gulinson and his attorney, without notice to Lehr, met in the attorney's office. December 23, 1920, Klatzkin and Judelovitz met there again without Gulinson and without notice to Lehr. An appraisal and award was agreed upon and signed by Klatzkin and Judelovitz. Lehr was then notified to come and sign it but he refused. He was not notified of any meeting for considering the award and the only meeting he attended was the visit of the three to the property.

The court held this to be a valid award and error is assigned thereon. The first attack on the award is that it was made without the presence of, or notice to the arbitrator, Lehr. Defendant in error claims he refused to come, but we find no evidence that he did so until sometime after the award had been signed. There is evidence that he refused to meet his co-appraisers, no one but him-

self, however, says when, and he says it was after the award was signed. The question then is whether an award by two, without notice to the third, made after one meeting of the three without agreement, is valid?

Natural justice requires that every arbitrator or appraiser should be present or have notice when the award is made. The privilege or power in two to make an award does not justify them in ignoring the third. *Hills v. Home Ins. Co.*, 129 Mass. 345; *Schmitt Bros. v. Boston Ins. Co.*, 82 App. Div. 234, 81 N. Y. Supp. 767. And the fact that the three met several times and failed to agree does not justify such action. *Schmitt Bros. v. Boston Ins. Co.*, *supra.* The defendant in error cites *American Steel Co. v. German-American Fire Ins. Co.*, 187 Fed. 730, 733, 109 C. C. A. 478, but the notice there referred to is not notice to the third arbitrator but to one of the parties.

The gathering of Judelovitz, Klatzkin, Gulinson and his attorney at the attorney's office and the subsequent attendance there at the attorney's request of Judelovitz and Klatzkin, the making up of the award there with no one to represent the defendant was not an unquestionable proceeding. While no improper conduct is shown there, yet, taken with all the other matters in the case, it casts suspicion upon the award, and with the lack of notice to the third arbitrator makes it impossible to affirm the judgment.

Arbitrators constitute a quasi court and while no formalities are necessary yet some of their duties and responsibilities are similar. If two of three referees should meet with the attorney for one side, without notice to the third or to the other side, and without its representation, and make up their report, we do not think that the court would be likely to approve it. Appraisers are not referees but their duty of impartiality is the same and we do not think that can be attained by awards without either the presence of all or notice to each.

Besides the above there are other defects. The award seems mathematically impossible.

The policy and contract of appointment requires the appraisers to ascertain the sound value of the whole building by estimating the cost of constructing it at the time of the fire and deducting therefrom depreciation, and to ascertain the loss or damage by estimating the cost of repair and deducting the depreciation.

Judelovitz testified that he estimated the cost of constructing the whole building at the time of the fire at $7800, and allowed 50 per cent for depreciation and reached as a result the sound value of $3726. This reduction is over 52 per cent, the umpire based his depreciation at 50 per cent on the age of the building as forty years, ignorant of the fact that it had been enlarged and repaired within ten years, so that part of it was ten years old, the sound value of $3726, is just low enough to give the insured the full amount of his policy, and Judelovitz says he agreed with Lehr's estimate of damage, $3016, while Lehr says that that was his estimate of cost of repairs; but setting these matters aside let us examine these findings:

Three thousand and sixteen dollars is about 80 per cent of $3726. If $3016 was the cost of repairs it should have been reduced for depreciation at something like the same rate as the cost of the whole reconstruction, 50 per cent. This would make the damage $1508, or at least much below $3,000. If, on the other hand, $3,016 is the damage, the cost of repair, having been reduced for depreciation say 50 per cent, must originally have been $6032, over 40 per cent more than the sound value of the whole, i. e., the cost of restoring 80 per cent of the building is 40 per cent more than the whole building is worth. The actual cost of repairs was $3,217. If the difference between that and the awarded damage, $201, be regarded as allowance for depreciation it is at a rate grossly at variance with the 50 per cent depreciation allowed for sound value. While the respective rates need not, perhaps, have been exactly the same, yet they could not be greatly different. Here is gross mistake. 5 C. J. 156.

For the defendant, one Brown, an experienced builder,

testified that the cost of reconstruction would be $14,749.13. Lehr and one Dunn, both experienced builders, testified to about the same amounts or greater.  The court thought these estimates were not a fair valuation of the building, because "values of real property  *  *  *  were practically at the peak of high values at that time."   That the valuation should not be based "upon temporarily inflated values," and such valuation was not just or "competent under this policy of insurance."  The court thus cast aside, as incompetent, testimony of the value at the time of the fire, not because it did not state the value at that time but because it did.  It was held that while the policy required the valuation to be as of the time of the fire yet because the value was "at the peak," "temporarily high" at that time, that that value was incompetent and so the testimony was disregarded.  This is obviously wrong and two or three considerations show it to be so perhaps yet more clearly.  Suppose the property had been heavily insured, could the insurer say he would not pay the value at the time of the loss because it was temporarily inflated?  Then again:  How could the court know that the value was inflated or "temporary", that is that it would decrease and how much?  Can it take judicial notice of future events? Subsequent events have proved that the value was not all temporary.  No!  Contracts should be enforced as they are made (*German Ins. Co. v. Hayden,* 21 Colo. 127, 135, 40 Pac. 453, 52 Am. St. Rep. 206), and in the present case the court's theory defeats the purpose of the eighty per cent clause.

The judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE WHITFORD concur.