Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 24, 2019

**2019 CO 65**

**No. 17SC583, *Owners Ins. v. Dakota Station II Condo. Ass'n*—Insurance Appraisal—Contract Interpretation.**

In this case, the supreme court interprets language in the appraisal provision of an insurance policy requiring each party to "select a . . . impartial appraiser." It concludes, based on the plain meaning of the word "impartial," that the policy requires the appraisers to be unbiased, disinterested, and unswayed by personal interest. The appraisers must not favor one side more than another, so they may not advocate for either party.

The supreme court also considers whether a contingent-cap fee agreement between a party and an appraiser rendered the appraiser partial as a matter of law. The supreme court holds that the agreement in this case didn't.

**2019 CO 65**

**Supreme Court Case No. 17SC583**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA733

**Petitioner:**

Owners Insurance Company, a Michigan corporation,

v.

**Respondent:**

Dakota Station II Condominium Association, Inc., a Colorado corporation.

**Judgment Affirmed in Part and Reversed in Part**
*en banc*
June 24, 2019

**Attorneys for Petitioner:**
Wheeler Trigg O'Donnell LLP
Terence M. Ridley
Evan Bennett Stephenson
Kayla L. Scroggins-Uptigrove
     *Denver, Colorado*

Wheeler Waters, P.C.
Karen H. Wheeler
Jami A. Maul
     *Greenwood Village, Colorado*

**Attorneys for Respondent:**
Orten Cavanagh & Holmes, LLC
Jonah G. Hunt
     *Denver, Colorado*

**Attorneys for Amicus Curiae American Insurance Association:**
Foran Glennon Palandech Ponzi & Rudloff PC
Amy M. Samberg
Matthew S. Ponzi
Thomas Orlando
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
American Family Insurance Legal Group
Dylan Lewis
*Englewood, Colorado*

Ruebel & Quillen, LLC
Jeffrey Clay Ruebel
*Westminster, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
The Frankl Law Firm, P.C.
Keith E. Frankl
*Greenwood Village, Colorado*

Speights & Worrich Colorado LLC
David Roth
*Denver, Colorado*

**Attorneys for Amici Curiae National Association of Public Insurance Adjusters and Rocky Mountain Association of Public Insurance Adjusters:**
Sherman & Howard, LLC
Christopher R. Mosley
*Denver, Colorado*

**Attorneys for Amici Curiae Property Casualty Insurers Association of America and Colorado Civil Justice League:**
Sweetbaum Sands Anderson PC
Jon F. Sands
Marilyn S. Chappell
*Denver, Colorado*

**Attorneys for Amicus Curiae United Policyholders:**
Reed Smith, LLP
Jim Davis
*Chicago, Illinois*

**JUSTICE HOOD** delivered the Opinion of the Court.

**JUSTICE SAMOUR** concurs in parts and dissents in part, and **CHIEF JUSTICE COATS** joins in the concurrence in part and dissent in part.

¶1 A condominium association, Dakota, filed two claims with its insurer, Owners, for weather damage. The parties couldn't agree on the money owed, so Dakota invoked the appraisal provision of its insurance policy.

¶2 The appraisal provision requires each party to "select a competent and impartial appraiser." An umpire would be selected by the parties or appointed by the court. The appraisers would assess the value of the property and amount of loss. Any disagreement would be submitted to the umpire. Any agreement as to the values reached by at least two of the three would bind them all.

¶3 The parties each selected an appraiser, putting the rest of the provision's terms into motion. Ultimately, the appraisers submitted conflicting value estimates to the umpire, and the umpire issued a final award, accepting some estimates from each appraiser. Dakota's appraiser signed onto the award, and Owners paid Dakota.

¶4 Later, Owners called foul. It moved to vacate the award, arguing that Dakota's appraiser was not "impartial" as required by the insurance policy's appraisal provision and that she failed to disclose material facts. The trial court disagreed and "dismissed" the motion to vacate. A division of the court of appeals affirmed.

¶5 Having agreed to review the case, we must interpret the policy's impartiality requirement and determine whether a contingent-cap fee agreement between Dakota and its appraiser rendered the appraiser partial as a matter of law. We conclude that the plain language of the policy requires appraisers to be unbiased, disinterested, and unswayed by personal interest. They must not favor one side more than another, so they may not

4

advocate for either party. We also hold that the contingent-cap fee agreement didn't render Dakota's appraiser partial as a matter of law.

¶6 Accordingly, we affirm the judgment of the court of appeals with respect to the contingent-cap fee agreement, reverse with respect to the impartiality requirement, and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶7 Dakota Station II Condominium Association Inc., the owner of a condominium development in Littleton, filed two claims with its insurer, Owners Insurance Company, for weather damage to the development.

¶8 Dakota disagreed with Owners about the value of the claims, so it invoked the following appraisal provision of its insurance policy:

> If [Owners] and [Dakota] disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of loss. In this event, *each party will select a competent and impartial appraiser*. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(Emphasis added.)

¶9 In accordance with this provision, each party selected an appraiser. The two appraisers couldn't agree on an umpire, so the court appointed one. The appraisers evaluated the property and submitted their conflicting estimates to the umpire. Each estimate included six cost categories.

5

¶10     After reviewing the appraisers' estimates and supporting documentation, the umpire adopted Owners' appraiser's estimates in four of the six cost categories and Dakota's appraiser's estimates in the other two. In total, the umpire found that the replacement cost reached almost $3 million.[1]

¶11     Even though the umpire adopted four of Owners' appraiser's six cost estimates, Owners' appraiser didn't agree with the roof-cost estimate, the big-ticket category ($2,553,434.50), and wouldn't sign the final determination of costs.[2] However, Dakota's appraiser and the umpire both signed the award. Owners then paid Dakota.

¶12     Months later, Owners filed a petition to vacate the award pursuant to section 13-22-223, C.R.S. (2018), of the Colorado Uniform Arbitration Act, arguing that Dakota's appraiser was impermissibly partial and failed to disclose material facts. Owners asserted that appraisers must be competent and impartial "like arbitrators." Owners later filed a clarification of the relief requested, explaining that the appraiser's "duties of impartiality stem from the Policy."

¶13     As relevant here, Owners alleged that Dakota's appraiser acted improperly by entering into a contract with the public adjuster that capped her fees at five percent of the insurance award (allegedly giving her a financial interest in the outcome).

---

[1] The appraisal award included adopted estimates for "replacement cost" and "actual cost." The parties focus their attention on the "replacement cost" estimates, so we do the same.

[2] Owners' appraiser believed that the total replacement cost was closer to $2.3 million and placed the roof-cost estimate at $1,865,402.74.

¶14    Later, at an evidentiary hearing, Owners' counsel asked Dakota's appraiser whether she felt that "it's appropriate to be an advocate for an insured when you're acting as an appraiser." The appraiser replied: "I think it's natural. I think you're an advocate for . . . Owners." In closing arguments, Owners' counsel argued that this testimony further demonstrated the appraiser's partiality.

¶15    The trial court "dismissed" the petition. Ultimately, the court concluded that Dakota's appraiser didn't act improperly or unlawfully. The trial court rejected Owners' contention that appraisers must act as impartially as an umpire or arbitrator in every instance. It reasoned that the law requires appraisers to be impartial in the sense that they must render their decisions based upon experience and not allow their findings to be influenced by the side that hired them or the side for whom they work.

¶16    The trial court also rejected Owners' contention that a contingent-cap fee provision of Dakota's appraiser's contract gave her an impermissible financial interest in the outcome of the appraisal. The appraiser's contract included a provision capping the appraiser's fees at five percent of the overall award but indicated that the provision would not apply unless it was initialed by the parties. The parties didn't initial it. However, the trial court concluded that the provision likely would have been enforceable against the appraiser if her fees had indeed exceeded five percent of the final award. The court reasoned that including the provision created an ambiguity that would be resolved against the appraiser, as the drafter.

¶17    Still, the trial court determined that the provision didn't render the appraiser impermissibly biased. It found the evidence "clear" that neither party thought that the

7

cap applied. It also found the cap didn't come into play because, regardless of whose estimates the umpire adopted, the fee would have been well under the cap. It rejected the contention that the provision rendered the appraiser biased as a matter of law. (The trial court didn't explicitly address Owners' concern about the appraiser testifying that it is "natural" for an appraiser to be an advocate.)

¶18 Owners appealed, and in a split, published decision, a division of the court of appeals affirmed the trial court's judgment. *Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 2017 COA 103, ¶ 1, __ P.3d __.

¶19 The division majority agreed with the trial court's reading of the impartial appraiser requirement, understanding it "to mean that an impartial appraiser in rendering his or her valuation opinion applies appraisal principles with fairness, good faith, and lack of bias." *Id.* at ¶ 20.

¶20 In reaching this conclusion, the majority first noted that any ambiguity in the definition of "impartial" is construed against Owners. *Id.* at ¶ 21 (citing *Union Ins. Co. v. Houtz*, 833 P.2d 1057, 1061 (Colo. 1994)). Next, it acknowledged that Black's Law Dictionary defines impartial as "not favoring one side more than another; unbiased and disinterested; unswayed by personal interest." *Id.* at ¶ 22. However, based on the context of the appraisal provision, the majority "[didn't] agree that the impartial appraiser called for in this policy may not favor one side more than the other." *Id.* Because the provision requires the two appraisers to submit any differences to an umpire, the majority reasoned that "[t]he policy plainly contemplates that the appraisers will put forth a value on behalf of the party that selects them." *Id.* at ¶ 23. The majority agreed with the Iowa Supreme

8

Court that, while the appraisers "must act fairly, without bias, and in good faith," they "do not violate their commitment by acting as advocates for their respective selecting parties." *Id.* at ¶ 24 (quoting *Cent. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 261 (Iowa 1991)). Thus, the majority concluded, "[s]o long as the selected appraiser acts fairly, without bias, and in good faith, he or she meets the policy requirement of an impartial appraiser." *Id.*

¶21 The majority declined to apply the standard of impartiality applicable to arbitrators. *Id.* at ¶ 25 (citing *Noffsinger v. Thompson*, 54 P.2d 683, 683 (Colo. 1936) ("An arbitrator . . . is bound to exercise a high degree of impartiality, without the slightest degree of friendship or favor towards either party.")). In rejecting the application of this standard, the majority declined to follow language in a 1923 case from this court, *Providence Washington Insurance Company v. Gulinson*, which states that "[a]ppraisers are not [arbitration] referees, but their duty of impartiality is the same." *Id.* at ¶ 26 (quoting *Providence Washington Ins. Co. v. Gulinson*, 215 P. 154, 155 (Colo. 1923)). The majority distinguished *Providence* from the instant case. *Providence*, the majority explained, concerned an appraiser and the umpire entering an award without notice to the second appraiser—not the conduct at issue here. *See id.*

¶22 Finally, the majority addressed each of Owners' contentions regarding Dakota's appraiser's alleged misconduct. *Id.* at ¶¶ 27–69. Ultimately, the majority agreed with the trial court's findings that no misconduct occurred. *Id.*

¶23 As relevant here, the majority agreed with the trial court that, under the circumstances, the five percent cap on Dakota's appraiser's fees didn't demonstrate bias.

9

*Id.* at ¶ 55. Because five percent of the final appraisal far exceeded the appraiser's actual billed fees and the parties didn't invoke the contract provision, the majority saw "no basis for concluding that [the appraiser's] impartiality was compromised." *Id.*

¶24    Judge Terry concurred in part and dissented in part. *Id.* at ¶ 71. In relevant part, she concluded that the trial court failed to "hold the insured's appraiser to the standard of impartiality provided for in the insurance policy." *Id.* Judge Terry gleaned the parties' intent "by looking to the plain and generally accepted meaning of the contract language." *Id.* at ¶ 73 (citing *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009)). She found the phrase "impartial appraiser" unambiguous, as Black's Law Dictionary clearly defines "impartial" as "[n]ot favoring one side more than another; unbiased and disinterested; unswayed by personal interest." *Id.* at ¶ 76 (quoting *Impartial*, Black's Law Dictionary (10th ed. 2014)). Allowing for an appraiser to advocate for the selecting party, according to Judge Terry, "would be to read the term 'impartial' completely out of the contract." *Id.* at ¶ 77.

¶25    Unlike the majority, Judge Terry concluded that *Providence* controlled. *Id.* at ¶ 79. She read *Providence* to establish "a general duty of impartiality for appraisers" to be as impartial as an arbitrator. *Id.* (citing *Providence*, 215 P. at 155). Because the trial court "never made specific findings as to whether [Dakota's appraiser] was in fact impartial," Judge Terry would have "reverse[d] and remand[ed] for the trial court to make additional factual findings as to whether [Dakota's] appraiser was impartial under the impartiality standard described in *Providence*." *Id.* at ¶¶ 81–82.

10

¶26     Owners appealed, and we granted certiorari.[3]

## II. Analysis

¶27     First, we consider Owners' contention that *Providence* mandates that insurance appraisers act as impartially as arbitrators. We conclude that *Providence*'s holding is limited to notice issues and doesn't control our interpretation of the impartiality requirement here.

¶28     Next, we turn to the language of the insurance policy's appraisal provision. Based on the plain meaning of the word impartial, we conclude that the policy requires appraisers to be unbiased, disinterested, and unswayed by personal interest. They must not favor one side more than another. This means no advocacy on behalf of either party.

¶29     Finally, we consider Owners' contention that the contingent-cap fee agreement rendered Dakota's appraiser partial as a matter of law. Because the award did not reach

---

[3] We granted certiorari to address the following issues:

1. Whether the court of appeals' rule permitting insurance appraisers to "favor one side more than the other" and act as "advocates" for the selecting party conflicts directly with this court's holding in *Providence Washington Insurance Co. v. Gulinson* that such "[a]ppraisers are not [arbitration] referees, but their duty of impartiality is the same." 215 P. 154, 155 (Colo. 1923).

2. Whether the court of appeals' rule permitting insurance appraisers to utilize contingent-cap fee agreements that tie the appraiser's own compensation to the ultimate appraisal award conflicts directly with the holding from *Providence Washington Insurance Co. v. Gulinson*, 215 P. 154, 155 (Colo. 1923), that such appraisers must be impartial in the same manner as an arbitrator.

11

the stated cap and the parties didn't believe the cap was in effect, we conclude that the cap didn't come into play and therefore doesn't demonstrate bias.

## A. The Impartiality Requirement

¶30    Owners argues that the impartiality requirement in the insurance policy must be read to require appraisers to be as impartial as arbitrators. In support of this contention, it principally relies on *Providence*. *See* 215 P. at 155. First, we conclude that *Providence* doesn't control our interpretation of the impartiality requirement in this insurance policy. Then, we turn to the language of the policy.

### 1. Standard of Review

¶31    Insurance policies are contracts, interpretations of which we review de novo. *See Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). Therefore, we review the meaning of the insurance policy's impartiality requirement de novo.

### 2. General Principles of Contract Interpretation

¶32    Employing general principles of contract interpretation, "we give effect to the intent and reasonable expectations of the parties" by enforcing the plain language of the contract. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). "When determining the plain and ordinary meaning of words, we may consider definitions in a recognized dictionary." *Renfandt v. N.Y. Life Ins. Co.*, 2018 CO 49, ¶ 18, 419 P.3d 576, 580.

### 3. *Providence* is Inapposite

¶33    Owners argues that *Providence* requires appraisers to be held to the same standards of impartiality as arbitrators. We disagree. Owners suggests that *Providence* articulated a general legal duty of appraisers, namely that, although they aren't arbitrators, "their

12

duty of imparti[a]lity is the same." But *Providence* does not impose a general legal duty of impartiality on appraisers; the language Owners points to is dicta.

¶34    *Providence* involved a fire insurance policy that included a similar appraisal provision to the one at issue here. *See* 215 P. at 154. The relevant portion of the *Providence* policy stated: "In the event of disagreement as to the amount of loss, the same shall . . . be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one and the two so chosen shall first select a competent and disinterested umpire." *Id.*

¶35    When the parties disagreed as to the amount of loss, each selected an appraiser, and the two appraisers selected an umpire. *Id.* at 154–55. However, one of the appraisers met with the umpire without notice to the second appraiser, and the two came to an agreement about the amount of loss. *Id.* at 155. We held that the award was invalid because of the lack of notice to the second appraiser. *Id.* at 155–56.

¶36    In reaching this conclusion, we invoked principles of "[n]atural justice" and compared appraisers to arbitrators, reasoning that "[a]ppraisers are not [arbitration] referees, but their duty of imparti[a]lity is the same." *Id.* at 155.

¶37    But ultimately, our holding was limited. We didn't establish a general duty of impartiality applicable to appraisers. We simply concluded that an award is invalid when one appraiser and the umpire agree to an award without notice to the second appraiser. That holding is confined to the specific notice problem presented in *Providence*. Because the conduct at issue here doesn't present a notice problem, *Providence* is inapposite.

13

## 4. An Individual Acting as an "Advocate" for One Side Cannot Simultaneously Be Considered "Impartial"

¶38 While the division majority's interpretation of the impartiality requirement doesn't conflict with *Providence*, it does conflict with the plain meaning of the word "impartial." The majority concluded that an appraiser can simultaneously advocate for a party and be impartial. *Owners Ins. Co.*, ¶ 67. However, the plain meanings of the words "impartial" and "advocate," as defined by commonly used dictionaries, *see Renfandt*, ¶ 18, 419 P.3d at 580, can't be reconciled.

¶39 Black's Law Dictionary defines "impartial" as "[n]ot favoring one side more than another; unbiased and disinterested; unswayed by personal interest." *Impartial*, Black's Law Dictionary (10th ed. 2014). Webster's New World College Dictionary similarly defines "impartial" as "favoring no one side or party more than another; without prejudice or bias; fair; just." *Impartial*, Webster's New World College Dictionary (5th ed. 2016).

¶40 In contrast, relevant definitions of "advocate" include "[s]omeone who assists, defends, pleads, or prosecutes for another," *Advocate*, Black's Law Dictionary (10th ed. 2014), and "a person who speaks or writes in support of something," *Advocate*, Webster's New World College Dictionary (5th ed. 2016).

¶41 To "advocate" for a party, by definition, involves acting for or in support of that party. Thus, to advocate for only one side in a dispute necessarily involves favoring one side over another. These definitions are fundamentally incompatible. In construing the phrase "each party will select a competent and impartial appraiser," we can't endorse a

14

reading of the impartiality requirement that suggests one can simultaneously be an "advocate" for one of the parties and be "impartial."[4]

¶42    The language of the appraisal provision doesn't create an ambiguity as to whether the meaning of the word "impartial" could encompass advocacy. The division majority reasoned that, because the provision requires the appraisers to submit differences to an umpire, the language of the provision both "distinguishes the 'impartial' appraisers from the umpire" and "plainly contemplates that the appraisers will put forth a value on behalf of the party that selects them." *Owners Ins. Co.*, ¶ 23. Thus, the division concluded that "the policy does not hold an appraiser to the standard of 'not favoring one side more than another.'" *Id.* at ¶ 24.

---

[4] To the extent that one could attempt to resolve this tension by focusing on the word "select," we find that interpretation unreasonable. It occurs to us that one might seize on the word "select" to suggest that the appraiser need only be impartial when chosen. But none of the parties or amici ask us to adopt that reading, and we know of no court that has relied on the word "select" to reach that conclusion. In contrast, several courts have used dictionary definitions of "impartial" to interpret this common appraisal provision. *See, e.g.*, *Landmark Am. Ins. Co. v. H. Anton Richardt, DDS, PA*, No. 2:18-cv-600-FtM-29UAM, 2019 WL 2462865 at *2, *3 (M.D. Fla. June 13, 2019) (using Black's Law Dictionary's definition of "impartial" to interpret an insurance policy instructing parties to "select a competent and impartial appraiser"); *Veranda Gardens, LLC v. Secura Ins.*, No. 3:18-cv-611-DJH-RSE, 2019 WL 2438788 at *1, *3 (W.D. Ky. June 10, 2019) (same); *Verneus v. Axis Surplus Ins. Co.*, No. 16-21863-CIV-MARTINEZ/GOODMAN, 2018 WL 4150933 at *1, *3 (S.D. Fla. Aug. 29, 2018) (same); *Great N. Ins. Co. v. 100 Park Ave. Homeowners Ass'n, Inc.*, No. 16-cv-02009-RPM at 1, 3–4 (D. Colo. Mar. 13, 2017) (order granting summary judgment) (using definitions of "impartial" and "partial" in Webster's II New Riverside University Dictionary to interpret an insurance policy instructing parties to "select and pay a competent and impartial appraiser"). Moreover, even if we were to adopt such a reading, it would leave unanswered the question of what parameters, if any, should govern post-selection.

¶43    We disagree with the majority's reasoning. The provision certainly contemplates that the appraisers might submit conflicting values, but a difference in opinion could result for many reasons, including a legitimate difference of methodology. Nothing in the language suggests that values will be put forth *on behalf* of a party, and we decline to accept such a reading when it directly conflicts with the plain meaning of "impartial."

¶44    We conclude that the appraiser's conduct must be evaluated using the plain meaning of the word impartial.[5] Thus, the policy requires the appraiser to be unbiased, disinterested, without prejudice, and unswayed by personal interest. She must not favor one side more than another. To conclude otherwise, in the words of Judge Terry, "read[s] the term 'impartial' completely out of the contract." *Id.* at ¶ 77 (Terry, J., dissenting). We reverse the holding of the court of appeals and remand so the trial court can determine whether Dakota's appraiser's conduct conformed to this standard.

---

[5] In reaching this conclusion, we acknowledge a distinction between advocating for a party and explaining a position. An appraiser can certainly explain her position without running afoul of the provision's impartiality requirement. An appraiser may, for example, defend her choice of methodology or use of certain data. Conversely, an appraiser may explain why she feels another appraiser's methodology or use of data is wrong. In neither instance would the appraiser necessarily be acting as an advocate *on behalf of* a party to the dispute. An appraiser advocates *for* or *on behalf of* a party when her actions are motivated by a desire to benefit a party. For example, if an appraiser simply seeks top dollar for a client, that is improper. In contrast, explaining a position or defending a choice in methodology can be motivated by a desire to reach an accurate outcome.

## B. The Fee Cap

¶45 Next, Owners argues that a five percent contingent-cap fee agreement tying Dakota's appraiser's compensation to the ultimate appraisal award rendered her partial as a matter of law. Dakota, on the other hand, argues that no such contractual cap was in place.

### 1. Standard of Review

¶46 Whether contingent-cap fee agreements that tie appraisers' compensation to the ultimate appraisal award render appraisers partial as a matter of law is a question of law, which we review de novo. *See Palizzi v. City of Brighton*, 228 P.3d 957, 962 (Colo. 2010) (noting that a ruling "as a matter of law" is a legal conclusion reviewed de novo). Therefore, we consider de novo whether the contingent-cap fee agreement rendered Dakota's appraiser partial as a matter of law.

### 2. The Fee Cap Didn't Render the Appraiser Partial as a Matter of Law

¶47 The trial court found that Dakota's appraiser drafted a document that included a provision capping the appraiser's recovery at five percent of the insurance award. However, "clear" evidence showed "that neither party thought that the five percent cap applied to this case." And, regardless of whose estimates the umpire adopted, the fee would have been well under the alleged cap. Even if the umpire had agreed with all six of Owners' appraiser's estimates, the total fees would have amounted to less than two percent of the final award. Thus, because the appraiser didn't believe the cap was in place and the award didn't appear to correspond to the estimates put forth by the

appraiser, the trial court concluded that the provision didn't render the appraiser impermissibly partial.

¶48     Like the division majority, "we see no basis for concluding that [the appraiser]'s impartiality was compromised by this [five percent] fee cap when [five percent] of the final appraisal was far in excess of the actual billed fees and the contract provision was not invoked." *See Owners Ins. Co.*, ¶ 55.  In such a case, where the appraiser didn't believe the cap was in effect and there is seemingly no relationship between the fees billed by the appraiser and the estimates she put forth, we can't say that hypothetical incentives rendered her partial.  Thus, while we are wary of the possible incentives these agreements create, we decline to hold that they render appraisers partial as a matter of law.

### III.  Conclusion

¶49     We conclude that the plain language of the policy requires appraisers to be unbiased, disinterested, and unswayed by personal interest.  They must not favor one side more than another, so they may not advocate for either party.  We also hold that the contingent-cap fee agreement didn't result in partiality on these facts.

¶50     Accordingly, we affirm the judgment of the court of appeals with respect to the contingent-cap fee agreement, reverse with respect to the impartiality requirement, and remand for further proceedings consistent with this opinion.

JUSTICE SAMOUR concurs in parts and dissents in part, and CHIEF JUSTICE COATS joins in the concurrence in part and dissent in part.

JUSTICE SAMOUR, concurring in part and dissenting in part.

¶51 I agree with the majority's determinations that our decision in *Providence Washington Insurance Company v. Gulinson*, 215 P. 154 (Colo. 1923), is inapposite, maj. op. ¶¶ 33–37, and that the contingent-fee cap agreement did not render Dakota's appraiser partial as a matter of law, *id.* at ¶¶ 47–48. But I disagree with the majority's conclusion that the plain language of the policy prohibits appraisers from advocating for or favoring either party. *Id.* at ¶¶ 38–44.

¶52 The majority holds that the plain language of the policy essentially requires the same level of impartiality from appraisers as that expected of judges. *See id.* at ¶¶ 5, 44. On paper, today's decision has appeal. However, in practice, it is not feasible. After all, there is a reason why we do not allow judges, who must be impartial, to be selected and compensated by one of the parties. The policy requires each party to select and compensate its own appraiser. But the majority nevertheless rules that appraisers may not advocate for or favor one side. I fear that today's decision will lead to more disputes between insurance companies and their insureds and will result in an increase in litigation. Indeed, the majority draws a line between partial and impartial that is easily smudged. According to the majority, an appraiser who advocates for a party is partial, but an appraiser who explains her position, defends her work, and attacks the other appraiser's work is impartial. *Id.* at ¶ 44 n.5. Were we living in a utopia, I might consider joining the majority. Because we are not, I cannot do so. Therefore, I respectfully dissent in part.

1

¶53 The appraisal provision in the parties' insurance policy reads as follows:

> If [Owners] and [Dakota] disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of loss. In this event, *each party will select a competent and impartial appraiser.* The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
>     a. Pay its chosen appraiser; and
>     b. Bear the other expenses of the appraisal and [of the] umpire equally.

The majority zeroes in on a single word, "impartial," and reads it out of context. This is what leads it to misinterpret the provision.

¶54 Consistent with our caselaw, I would give effect to the intent and reasonable expectations of the parties by enforcing the plain and ordinary meaning of *all* the words used, *see Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007), and by reading the provisions of the policy as a whole, rather than in isolation, *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 545–46 (Colo. App. 2010). In doing so, I would "construe the policy so that *all provisions* are harmonious and none is rendered meaningless." *Id.* at 546 (emphasis added). Where appropriate, I would consult recognized dictionaries to ascertain the meaning of the terms used. *Sch. Dist. No. 1 v. Denver Class. Teach. Ass'n*, 2019 CO 5, ¶ 13, 433 P.3d 38, 41.

¶55 The plain and ordinary meaning of the policy requires the insurer and the insured each to select an appraiser who is "impartial." I do not take issue with the dictionary definitions of "impartial" on which the majority relies. The flaw in the majority's position

is that it reads some of the language out of the provision, and that, in turn, renders the provision overly broad. Rather than construe the policy as simply requiring each party to *select* an appraiser who is "impartial," the majority holds that, in addition, a *selected* appraiser may not advocate for either party or favor one side. The majority ignores the term "select," which the parties presumably included in the policy to narrow the scope of the provision.

¶56    The provision does not address the conduct of a *selected* appraiser; it addresses the *selection* of an appraiser. The most sensible reading of the provision is that neither party may appoint a family member, a close friend, or an interested person (such as someone with a financial stake in the matter) as its appraiser. The provision does not say that an appraiser selected by a party must submit an impartial appraisal or that the work performed by an appraiser or the method used to arrive at an appraisal must be impartial. And the provision certainly contains no information related to whether a selected appraiser may advocate for anything or favor anyone. The provision is silent on all those issues. Had the parties intended the majority's construction, they presumably would have said so in the policy.

¶57    If, as the majority determines today, an appraiser must be impartial in all her work, why would there be a need for two appraisers (one selected by each party)? And why would the policy allow each party to pay for its own appraiser? We do not require two judges (one selected by each party), much less allow a judge to be paid by a party. One judge who is compensated by neither party suffices because we expect the judge's work

3

and decisions to be impartial. Considering that the same impartiality expectation exists for appraisers, at least according to the majority, then one appraiser unpaid by either party should suffice. But that's not what the provision calls for.

¶58 The provision not only requires each party to select and pay for its own appraiser, it indicates that the two appraisers must select an umpire or, if they cannot agree on an umpire, either may request that a judge make that selection. The umpire is charged with resolving differences between the appraisals. Consequently, the policy contemplates that there may be disagreement on the final valuations submitted by the two appraisers and that the umpire will address any conflicts between those valuations. Not surprisingly, the parties are to bear the expenses related to the umpire's compensation equally. Given that the appraisers must select one umpire together and that the parties must pay an equal share of his expenses, and given further the role of the umpire, it makes sense to interpret the provision as not requiring that each appraiser's work and final valuation be impartial. The umpire is responsible for addressing any disagreements between the appraisers, including as a result of any partiality. In this sense, umpires are much more like judges than appraisers are.

¶59 I worry that today's decision, apart from its impracticality (or perhaps because of it), will lead to increased litigation between insurance companies and policyholders by either opening appraisers to attack as soon as there is disagreement on their valuations, or, as happened here, allowing parties to intentionally sit on an impartiality issue so that they may later upend an unsatisfactory decision by an umpire. Even more troubling is

4

the fact that the majority's interpretation further tips the scale in favor of the insurance industry. There is already an imbalance of power in this area because, unlike policyholders, insurers are repeat players in the appraisal process. Allowing an appraiser to advocate for the policyholder to an umpire helps level the playing field. Today the majority takes that away.

¶60 I see nothing in the policy that prevents an appraiser from advocating for a position in favor of the party that retained her. Because formulating an appraisal is not an exact science, two selected appraisers may be partial and advocate for and favor different parties while remaining fair and reasonable.

¶61 Significantly, when an appraiser advocates for her own work and final valuation, she essentially advocates for one party, and it's human nature to expect (and want) an appraiser to advocate for her own work and final valuation. Stated differently, having an appraiser advocate for her own work and valuation will almost certainly favor one side. Does the majority believe that this runs afoul of the policy? And if not, what is the difference between, on the one hand, an appraiser explaining and defending her final valuation and attacking the other appraiser's final valuation, all of which the majority says is allowed, and, on the other, an appraiser advocating for her final valuation, which the majority says is prohibited? Are there magic words that transform a permissible defense of one's appraisal or an acceptable attack of the other appraiser's work into prohibited advocacy? Or is the determining factor the appraiser's tone or gestures? And how do we divine whether an appraiser's explanation is "motivated by a desire to benefit

5

a party," such as by seeking "top dollar," or "by a desire to reach an accurate outcome"? Maj. op. ¶ 44 n.5.

¶62 Because I cannot make heads nor tails of the distinction the majority draws between partial and impartial conduct, and because I believe the majority does a disservice by further muddying what are already murky waters, I respectfully dissent in part. I would affirm the division's judgment on other grounds.

I am authorized to state that CHIEF JUSTICE COATS joins in this concurrence in part and dissent in part.