JUSTICE SAMOUR, concurring in part and dissenting in part.
¶51 I agree with the majority's determinations that our decision in Providence Washington Insurance Company v. Gulinson , 73 Colo. 282, 215 P. 154 (1923), is inapposite, maj. op. ¶¶ 33-37, and that the contingent-fee cap agreement did not render Dakota's appraiser partial as a matter of law, id. at ¶¶ 47-48. But I disagree with the majority's conclusion that the plain language of the policy prohibits appraisers from advocating for or favoring either party. Id. at ¶¶ 38-44.
¶52 The majority holds that the plain language of the policy essentially requires the same level of impartiality from appraisers as that expected of judges. See id. at ¶¶ 5, 44. On paper, today's decision has appeal. However, in practice, it is not feasible. After all, there is a reason why we do not allow judges, who must be impartial, to be selected and compensated by one of the parties. The policy requires each party to select and compensate its own appraiser. But the majority nevertheless rules that appraisers may not advocate for or favor one side. I fear that today's decision will lead to more disputes between insurance companies and their insureds and will result in an increase in litigation. Indeed, the majority draws a line between partial and impartial that is easily smudged. According to the majority, an appraiser who advocates for a party is partial, but an appraiser who explains her position, defends her work, and attacks the other appraiser's work is impartial. Id. at ¶ 44 n.5. Were we living in a utopia, I might consider joining the majority. Because we are not, I cannot do so. Therefore, I respectfully dissent in part.
¶53 The appraisal provision in the parties' insurance policy reads as follows:
If [Owners] and [Dakota] disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of loss. In this event, each party will select a competent and impartial appraiser . The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to *55 by any two will be binding. Each party will:
a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and [of the] umpire equally.
The majority zeroes in on a single word, "impartial," and reads it out of context. This is what leads it to misinterpret the provision.
¶54 Consistent with our caselaw, I would give effect to the intent and reasonable expectations of the parties by enforcing the plain and ordinary meaning of all the words used, see Hoang v. Assurance Co. of Am. , 149 P.3d 798, 801 (Colo. 2007), and by reading the provisions of the policy as a whole, rather than in isolation, Sachs v. Am. Family Mut. Ins. Co. , 251 P.3d 543, 545-46 (Colo. App. 2010). In doing so, I would "construe the policy so that all provisions are harmonious and none is rendered meaningless." Id. at 546 (emphasis added). Where appropriate, I would consult recognized dictionaries to ascertain the meaning of the terms used. Sch. Dist. No. 1 v. Denver Class. Teach. Ass'n , 2019 CO 5, ¶ 13, 433 P.3d 38, 41.
¶55 The plain and ordinary meaning of the policy requires the insurer and the insured each to select an appraiser who is "impartial." I do not take issue with the dictionary definitions of "impartial" on which the majority relies. The flaw in the majority's position is that it reads some of the language out of the provision, and that, in turn, renders the provision overly broad. Rather than construe the policy as simply requiring each party to select an appraiser who is "impartial," the majority holds that, in addition, a selected appraiser may not advocate for either party or favor one side. The majority ignores the term "select," which the parties presumably included in the policy to narrow the scope of the provision.
¶56 The provision does not address the conduct of a selected appraiser; it addresses the selection of an appraiser. The most sensible reading of the provision is that neither party may appoint a family member, a close friend, or an interested person (such as someone with a financial stake in the matter) as its appraiser. The provision does not say that an appraiser selected by a party must submit an impartial appraisal or that the work performed by an appraiser or the method used to arrive at an appraisal must be impartial. And the provision certainly contains no information related to whether a selected appraiser may advocate for anything or favor anyone. The provision is silent on all those issues. Had the parties intended the majority's construction, they presumably would have said so in the policy.
¶57 If, as the majority determines today, an appraiser must be impartial in all her work, why would there be a need for two appraisers (one selected by each party)? And why would the policy allow each party to pay for its own appraiser? We do not require two judges (one selected by each party), much less allow a judge to be paid by a party. One judge who is compensated by neither party suffices because we expect the judge's work and decisions to be impartial. Considering that the same impartiality expectation exists for appraisers, at least according to the majority, then one appraiser unpaid by either party should suffice. But that's not what the provision calls for.
¶58 The provision not only requires each party to select and pay for its own appraiser, it indicates that the two appraisers must select an umpire or, if they cannot agree on an umpire, either may request that a judge make that selection. The umpire is charged with resolving differences between the appraisals. Consequently, the policy contemplates that there may be disagreement on the final valuations submitted by the two appraisers and that the umpire will address any conflicts between those valuations. Not surprisingly, the parties are to bear the expenses related to the umpire's compensation equally. Given that the appraisers must select one umpire together and that the parties must pay an equal share of his expenses, and given further the role of the umpire, it makes sense to interpret the provision as not requiring that each appraiser's work and final valuation be impartial. The umpire is responsible for addressing any disagreements between the appraisers, including as a result of any partiality. In this sense, umpires are much more like judges than appraisers are.
*56 ¶59 I worry that today's decision, apart from its impracticality (or perhaps because of it), will lead to increased litigation between insurance companies and policyholders by either opening appraisers to attack as soon as there is disagreement on their valuations, or, as happened here, allowing parties to intentionally sit on an impartiality issue so that they may later upend an unsatisfactory decision by an umpire. Even more troubling is the fact that the majority's interpretation further tips the scale in favor of the insurance industry. There is already an imbalance of power in this area because, unlike policyholders, insurers are repeat players in the appraisal process. Allowing an appraiser to advocate for the policyholder to an umpire helps level the playing field. Today the majority takes that away.
¶60 I see nothing in the policy that prevents an appraiser from advocating for a position in favor of the party that retained her. Because formulating an appraisal is not an exact science, two selected appraisers may be partial and advocate for and favor different parties while remaining fair and reasonable.
¶61 Significantly, when an appraiser advocates for her own work and final valuation, she essentially advocates for one party, and it's human nature to expect (and want) an appraiser to advocate for her own work and final valuation. Stated differently, having an appraiser advocate for her own work and valuation will almost certainly favor one side. Does the majority believe that this runs afoul of the policy? And if not, what is the difference between, on the one hand, an appraiser explaining and defending her final valuation and attacking the other appraiser's final valuation, all of which the majority says is allowed, and, on the other, an appraiser advocating for her final valuation, which the majority says is prohibited? Are there magic words that transform a permissible defense of one's appraisal or an acceptable attack of the other appraiser's work into prohibited advocacy? Or is the determining factor the appraiser's tone or gestures? And how do we divine whether an appraiser's explanation is "motivated by a desire to benefit a party," such as by seeking "top dollar," or "by a desire to reach an accurate outcome"? Maj. op. ¶ 44 n.5.
¶62 Because I cannot make heads nor tails of the distinction the majority draws between partial and impartial conduct, and because I believe the majority does a disservice by further muddying what are already murky waters, I respectfully dissent in part. I would affirm the division's judgment on other grounds.
I am authorized to state that CHIEF JUSTICE COATS joins in this concurrence in part and dissent in part.